UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MICHAEL D. WESLEY,
                              :
            Plaintiff,            REPORT & RECOMMENDATION
                              :            and
         -against-               MEMORANDUM & ORDER
                              :
IMAM MUHAMMAD et al.,            05 Civ. 5833 (GEL)(MHD)
                              :
            Defendants.
------------------------------x

TO THE HONORABLE GERARD E. LYNCH, U.S.D.J.:


     Plaintiff Michael Wesley is an inmate in the New York City
correctional system. He originally filed three pro se complaints in
this court, alleging that various prison personnel at three Rikers
Island prison facilities had infringed his right to the free
exercise of his Muslim faith because the facilities were serving
meals and providing food items at the prison commissary in a manner
that violated the Halal requirements of his religion. (See Order
dated June 23, 2005 at 1-2 & n.1).[1] The three cases were later
consolidated, and plaintiff has since acquired pro bono
representation. (Id.; Aff. of Madeleine Giansanti Caǧ, executed
July 9, 2007, at ¶¶ 2-3). His counsel recently filed a second
amended complaint ("2d Am. Compl."), which proffers similar but far
more detailed allegations and names twenty-three individuals as

_____

     [1] The three facilities in question are the Otis Bantum
Correctional Center, the George Motchan Detention Center, and the
Anna M. Kross Center. (See 2d Amended Compl. ¶ 4).

1

well as various municipal agencies and New York City as defendants.

Following the filing of the most recent complaint, defendants moved to dismiss that pleading for facial inadequacy. They contend that the complaint fails to state a claim because plaintiff's three complaints, taken together, demonstrate that he has in fact not fully exhausted his administrative grievance procedures before filing suit, thus proving an affirmative defense. (Defs.' Reply Mem. of Law at 1-8). They further assert that the complaint does not adequately describe the personal participation of any of the individual defendants in the alleged wrongful conduct. Finally, they argue that all of the individual defendants are protected from liability by a qualified-immunity defense. Plaintiff has opposed the motion and has separately asked for expedited discovery to ascertain in more detail who bore responsibility for the violation of his First Amendment rights.

For the reasons that follow, we recommend that defendants' motion to dismiss be granted in part and denied in part. We further grant leave to plaintiff to conduct certain expedited discovery.

A. <u>Plaintiff's Allegations and Claims</u>

Plaintiff alleges that he is an adherent of the Muslim faith,

and that one requirement of that religion is that he consume only food prepared in a manner consistent with "Halal" requirements, including avoidance of all pork-based products. (2d Am. Compl. at ¶¶ 17-25). He reports that he has been in custody in three New York City prison facilities from September 23, 2002 through December 23, 2005. (Id. at ¶¶ 4-5). He alleges that during that time, although the New York City Department of Correction ("DOC") had a rule requiring disposable trays for Kosher and Halal meals, it failed to comply with that rule for Muslim inmates. (Id. at ¶ 36). As a result, he asserts, although the prisons provide separate non-disposable trays for Halal and non-Halal meals (colored blue for Halal and beige for non-Halal), they have consistently failed to provide to him or other prisoners of the Muslim faith meals that conform to the basic requirements of their faith. (Id. at ¶¶ 28-32, 46-57). According to plaintiff, these violations include (1) a failure to provide meat that is fully cooked through, as required by Halal rules (id. at ¶ 55), (2) use in cooking of margarine and other products that contain pork-based by-products (id. at ¶ 56), (3) the stacking of all non-disposable trays together (both those used for Halal and those used for non-Halal meals) and washing them all in a common dishwasher (id. at ¶¶ 47-49, 51-52), (4) the washing of all non-disposable trays with soap that contains pork-based ingredients (id. at ¶¶ 53-54), and (5) sales of food products, including non-Halal items, in the prison commissaries

without identifying which are non-Halal, a practice that results in Muslim inmates unknowingly placing non-Halal food on the blue trays. (Id. at ¶¶ 37-42, 44-46)).

Plaintiff further asserts that he was aware of these violations, and brought them to the attention of prison authorities. However, those officials failed or refused to deal with these problems, which were the product of their own policies or practices. (Id. at ¶¶ 8(a)-(k), 16, 60). He also says that he sought to avoid ingesting what his religion teaches is contaminated food by subsisting on a diet of "bread, matzo crackers and water," but that hunger compelled him, approximately twice a week, to eat non-Halal food (that is, food designated as Halal but contaminated) that was placed on his blue tray. (Id. at ¶ 58).

As defendants, plaintiff names numerous corrections officers and several Department officials, as well as a number of John Doe defendants and the City of New York.[2] He alleges, separately as to each of the named supervisory defendants, that they were informed of the violations and failed to correct them. (E.g., id. at ¶¶ 8(a)-(k), 60). As for the other individual defendants, he asserts that they participated in the sale of unidentified non-Halal food

_____

[2] Plaintiff's separate motion for expedited discovery is directed at unearthing the precise responsibility among prison personnel for the alleged wrongful practices.

items in the prison commissaries, with the result that Halal trays in the dining facilities were contaminated. (<u>Id.</u> at ¶ 6(a)-(n)).[3]

Based on these allegations, plaintiff asserts four claims, all for violation of his right to the free exercise of his religious beliefs. These claims are based, respectively, on (1) the First and Fourteenth Amendments, (2) the Religious Land Use and Institutionalized Persons Act, (3) Article I, section 3 of the New York State Constitution and section 610 of the N.Y. Correctional Law, and (4) Title 40, Chapter I, section 08 of the Rules of New York City. (<u>Id.</u> at ¶¶ 61-73). For relief, he asks for a declaratory judgment, compensatory and punitive damages and an award of attorney's fees. (<u>Id.</u> at p. 19, ¶¶ (a)-(d)).

Finally, the current version of the complaint makes only a passing reference to the exhaustion of prison remedies. In so doing, it states simply that "Plaintiff has exhausted such administrative remedies as were available to him." (<u>Id.</u> at ¶ 16).

---

[3] Plaintiff also named the New York City Department of Correction, but in the face of a challenge by defendants, he has chosen to drop that defendant, in apparent concession to the fact that the Department is not a suable entity. (Pl.'s Mem. of Law at 1 n.1). The complaint also lists the New York City Law Department as a defendant, but defendants' motion does not target its inclusion as a defendant.

ANALYSIS

I. <u>Defendants' Motion to Dismiss</u>

Defendants press three principal arguments in support of their motion to dismiss. First, they contend that plaintiff "fails to state a federal claim upon which relief can be granted" because he has purportedly not exhausted his administrative remedies. (Defs.' Mem. of Law at 3; Defs.' Reply Mem. of Law at 1). Although articulated as a challenge to the face of his pleading, this argument substantially rests on purported admissions contained in plaintiff's prior <u>pro</u> <u>se</u> pleadings. (Defs.' Mem. of Law at 8-9). Second, defendants argue that plaintiff's current complaint does not adequately plead the personal involvement of the various individually named defendants. (Defs.' Mem. of Law at 13-15; Defs.' Reply Mem. of Law at 12-16). This argument plainly turns on the facial adequacy of the Second Amended Complaint. Third, defendants argue that the individually named defendants are entitled to qualified immunity, an argument that also must depend upon the factual allegations of the current complaint. (Defs.' Mem. of Law at 15-18; Defs.' Reply Mem. of Law at 17-20).

We address these arguments in the order in which defendants present them.

A. <u>Exhaustion</u>

Defendants' first argument -- that Wesley has failed to plead a claim because he has not exhausted his prison remedies, thereby justifying dismissal for failure to comply with the pertinent provision of 42 U.S.C. § 1997e(a) -- has a familiar ring. It is virtually identical to arguments made by defendants in a number of parallel lawsuits by other City inmates challenging alleged violations of Halal requirements at Rikers Island. Indeed, this court has already rejected those arguments in the first two sets of motions to be adjudicated. <u>See</u> <u>Randolph v. City of New York Dep't of Correction</u>, 2007 WL 2660282, *4-9 (S.D.N.Y. Sept. 7, 2007); <u>Robinson v. City of New York</u>, 06 Civ. 945 (GEL)(MHD), Report & Recommendation at 5-17 (S.D.N.Y. March 7, 2007). In each, defendants sought dismissal for lack of exhaustion based solely on their interpretation of certain allegations in the <u>pro</u> <u>se</u> plaintiffs' complaints. In each, defendants offered no evidence to demonstrate that plaintiffs had not exhausted their prison remedies and also failed to address the potential exceptions to the requirement of full exhaustion that the Second Circuit recognized in a series of decisions originating in 2003. <u>See</u>, <u>e.g.</u>, <u>Randolph</u>, 2007 WL 2660282 at *8-9 & n.9 (discussing <u>Ortiz v. McBride</u>, 380 F.3d 649 (2d Cir. 2004), and similar cases).

In those earlier rulings, we noted that the Supreme Court had made clear in Jones v. Bock, 127 S. Ct. 910 (2007), that a plaintiff need not plead satisfaction of the exhaustion requirement, and that the cited statutory exhaustion provision merely creates an affirmative defense, thus obligating the defendants both to plead the defense and to prove the facts on which it is based. See Randolph, 2007 WL 2660282 at *5. We further observed that although dismissal on the basis of exhaustion (or other affirmative defenses) might be obtained if the allegations of the complaint clearly demonstrated that the defense was merited, a pro se plaintiff's pleading references to various efforts that he had made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies. Id. at *4-8. We also held that, in any event, if the complaint indicated that the plaintiff's efforts, through a grievance, to have prison administrators deal with the problem had failed, there was at least a possibility that the case might come within one of the Second Circuit's recognized exceptions to complete exhaustion, thus separately precluding dismissal on the face of the complaint. Id. at *8-9.

Undeterred, defendants in this case (who are represented by the same attorney as in the other cited cases) make essentially the same arguments. Apart from ignoring the

allegation in plaintiff's current amended complaint that he exhausted all administrative remedies that were available to him, defendants avoid addressing the holdings in Jones and the 2003 Second Circuit exhaustion decisions.[4] Moreover, to the extent that defendants make any effort to come to grips with the prevailing authority, they simply assert that in plaintiff's earlier pro se versions of his complaint in this case, he alluded to filing a grievance and contacting senior prison authorities about the problems he encountered in obtaining Halal meals, a set of allegations that defendants once more view as tantamount to an admission not only that he did not completely exhaust his administrative remedies, but also that the exceptions to the exhaustion requirement recognized by this Circuit do not apply: 1) that administrative remedies were unavailable to the plaintiff, 2) that as a result of defendants' actions they waived or are estopped from raising non-exhaustion as an affirmative defense, or 3) that other special circumstances existed which could excuse plaintiff's alleged failure to exhaust.[5] (Defs.' Reply Mem. Of Law at 4-11).

---

[4] As we noted in Randolph, that set of 2003 decisions remain substantially good law in this circuit despite an intervening Supreme Court decision. See id. at *9 n.9 (discussing effect of Woodford v. Ngo, 126 S.Ct. 2378 (2006), and citing inter alia, Macias v. Zenk, 495 F.3d 37 (2d Cir. 2007)).

[5] These "caveats" were summarized recently by the Court of Appeals in Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006).

9

This particular argument fails for at least three reasons. First, an allegation in a complaint that has been superceded by an amended pleading is not a binding and conclusive judicial admission, and hence is relevant only in a fact-finding proceeding in which the pleader's credibility may be called into question. See, e.g., Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 32 (2d Cir. 2002).[6] Since plaintiff now alleges that he exhausted his available remedies, any prior arguably inconsistent allegation is simply not determinative on a Rule 12(b)(6) motion. Second, the earlier allegations cited by defendants do not state or compel the inference that plaintiff did not avail himself of all remedies that were in fact available to him, much less rule out the possibility that any exception to the exhaustion requirement could apply.[7] He

_____

[6] Although defendants provide a district court-level citation for the proposition that "admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings," and "the Court may consider them on a motion to dismiss under Rule 12(b)(6)," Sulton v. Wright, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003), the Second Circuit has since clearly rejected this view. Tho Dinh Tran, 281 F.3d at 32.

[7] In fact, the very allegations that defendants cite from the plaintiff's earlier complaints suggest the potential applicability of one or more of those exceptions. As we observed in Randolph,

> The fact that this body of case law [Ortiz et al.] requires a case-specific inquiry adds further heft to our conclusion that a Rule 12(b)(6) dismissal would be inappropriate on the basis of what defendants have inferred from the *pro se* plaintiff's allegations. This is particularly so when those allegations are susceptible to

simply referred to efforts that he had made to press his complaints, without specifying whether they were the only steps that he had taken or whether circumstances beyond his control had prevented him from taking any further steps.[8] Third, even if it were the case that at the time that plaintiff filed his prior pleadings he had not exhausted all remedies and that his earlier allegations could be so read, his current pleading is not necessarily inconsistent with such an earlier admission, since it is at least possible that in the interim he proceeded to exhaust all remaining available administrative remedies.[9]

---

a reading that plaintiff indeed complied with procedural requirements, or that circumstances existed that might excuse any incomplete compliance. *See, e.g. Abney* 380 F.3d at 667 ("Exhaustion may be [excus]ed in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.").

2007 WL 2660282 at *9 (citing Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004)).

[8] In plaintiff's original complaint he referred to having filed a grievance about pork being sold in the commissary and writing a letter to the warden, who made no response, and also mentioned that he had complained to the prison imam, who told him to file a lawsuit. He also referred to having sent the grievance to the Department of Correction at 60 Hudson Street. (See Compl. at ¶ IV(B)-(I)). In plaintiff's first amended complaint he referred simply to having written a grievance and receiving no response, and also stated that the prison grievance system did not cover the type of complaint that he had made. (Am. Compl. at ¶ II(A)-(C)).

[9] Plaintiff's prior pleadings were dated April 30, 2005 and October 30, 2005, respectively. Plaintiff was still incarcerated in the City system as of those dates.

Rather than re-plow this same field at any length, we invoke our prior discussions of the defendants' exhaustion arguments in the parallel Halal cases, and reject them for the same reasons as we noted in <u>Randolph</u>, 2007 WL 2660282 at *4-9, and the report and recommendation in <u>Robinson</u>, 06 Civ. 945, Report & Recommendation at 5-17. In short, the viability of this defense requires factual development and cannot be decided on the basis of the complaint. <u>See</u>, <u>e.g.</u>, <u>Wesley v. Hardy</u>, 2006 WL 3898199, *2-4 (S.D.N.Y. Dec. 12, 2006)(assessing exhaustion defense on summary judgment, with evidentiary record).

B. <u>Pleading of Personal Involvement</u>

Defendants next target the allegations of the complaint that seek to define the role that each of the individual defendants played in violating his rights. In pressing the argument that plaintiff fails to allege the requisite personal responsibility of each such defendant, they separately assess the pleadings with regard to the correctional staff defendants (principally corrections officers) and the supervisory defendants.

If a plaintiff seeks to impose damage liability on a government employee under section 1983, he cannot rely on the

principle of <u>respondeat</u> <u>superior</u>. <u>See</u>, <u>e.g.</u>, <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991); <u>Al-Jundi v. Estate of Rockefeller</u>, 885 F.2d 1060, 1065 (2d Cir. 1989). The plaintiff must plead and prove that the defendant had some direct involvement in, or responsibility for, the misconduct. <u>See</u> <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 394 (2d Cir. 1997). A supervisory defendant may be held legally responsible for a constitutional violation if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) <u>Accord</u>, <u>e.g.</u>, <u>Sealey v. Gitman</u>, 116 F.3d 47, 51 (2d Cir. 1997).


In the Second Amended Complaint plaintiff lists fourteen defendant corrections officers, each of whom is alleged to have "sold and distributed non-Halal food in the Commissary while Mr. Wesley was an inmate." (2d Am. Compl. at ¶¶ 6(a)-(n)). In defendants' opening memorandum of law they argue simply that these allegations are inadequate because they do not state that

any of these defendants prepared or served meals in violation of Halal requirements or participated in the gathering or washing of food trays in the prison dining hall. (Defs.' Mem. of Law at 14). In response, plaintiff notes that his allegations against these defendants concern their role in providing non-Halal food products from the commissary to unknowing Islamic inmates, who in turn placed those food products on Halal food trays in the dining hall, thus contaminating those trays. Plaintiff's theory is that by failing to notify inmates who purchased items at the commissary as to which foods were non-Halal, these defendants bore some responsibility for the contamination, and hence the violation of Halal requirements, for all Islamic prisoners (plaintiff included) who ate meals in those prison facilities. (Pl.'s Mem. of Law at 2, 10).

In replying to this analysis, defendants reiterate that plaintiff fails to allege that these defendants were involved in meal preparation or tray stacking, and they further argue that the complaint cites "no facts alleging that the correctional staff defendants directly participated in (or were responsible for the supervision of inmates or other staff charged with) identifying items containing pork products in the Commissary[.]" (Defs.' Reply Mem. of Law at 14). They

nonetheless recognize plaintiff's legal theory of causation based on the non-identification of Halal products in the commissary, but rather than address the viability of that theory, they go on to assert, in entirely conclusory terms, that "[p]laintiff's claim is conclusory, highly [] speculative, and sets forth <u>no</u> facts to render the personal involvement of these defendants plausible." (<u>Id.</u> at 14-15)(emphasis in original).

In assessing this aspect of defendants' motion, we start by noting the relative stringency of the standard that the movant must meet in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds</u> by <u>Davis v. Scherer</u>, 468 U.S. 183, 188 (1984); <u>accord</u>, <u>e.g.</u>, <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 476 (2d Cir. 2006).

In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. <u>See</u>, <u>e.g.</u>, <u>Achtman v. Kirby, McInerney & Squire, LLP</u>, 464 F.3d 328, 337 (2d Cir. 2006); <u>Still v. DeBuono</u>, 101 F.3d 888, 891 (2d

Cir. 1996). The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (internal quotation marks omitted)). The Supreme Court recently rejected this formulation, however, see Bell Atl. Corp. v. Twombley, 127 S.Ct. 1955, 1968-69 (2007) (stating that Conley "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival"), though the test for dismissal remains a demanding one and precludes dismissal unless it is apparent from the face of the complaint that the claim is not "plausible". See, e.g., Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). According to the Second Circuit, Twombley does not require "a universal standard of heightened fact pleading, but...instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal, 490 F.3d at 157-58; see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)(stating that to survive dismissal, pleading must "raise a right to relief above the speculative level")(internal quotation marks omitted)(quoting Twombley, 127

16

S.Ct. at 1965).

In addressing a Rule 12(b)(6) motion, the court may not consider evidence proffered by the moving party. Rather, it is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated into it by reference, any documents that are integral to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. <u>See</u>, <u>e.g.</u>, <u>ATSI Commc'ns, Inc.</u>, 493 F.3d at 98; <u>Leonard F. v. Israel Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991).

Judged by these standards, defendant's argument fails. Fairly construed, the complaint alleges that the officer defendants were directly involved in providing non-Halal food items to observant inmates without telling them that the products were non-Halal, and that as a consequence the non-Halal products were consumed and/or placed on blue trays (thus contaminating them). Thus, defendants' argument that the pleading fails to allege that these officers "participated in ...identifying items containing pork products in the Commissary" (Defs.' Reply Mem. at 14) entirely misses the

17

point, which is that plaintiff accuses them of <u>not</u> "identifying items containing pork products." Hence, this line of argument cannot justify dismissal of the complaint against the corrections officers working at the commissary. <u>See also</u> <u>Randolph</u>, 2007 WL 2660282 at *10-11 (rejecting a similar argument).[10]

As for the supervisory defendants (whom defendants identify as Commissioner Martin Horn and the wardens of the three Rikers Island facilities), they are alleged to have been responsible both for the practices at the commissary and for the other violations allegedly taking place in the prisons' dining facilities. In moving to dismiss, these defendants initially argue that the complaint is deficient, despite its reference to those defendants having -- in defendants' words -- been "generally made aware of violations through letters

---

[10] As we also noted in <u>Randolph</u>:

A somewhat different argument might be advanced with regard to the commissary claims -- that plaintiff does not plead any involvement on the part of these defendants in the decision either to sell pork items or to fail to provide any listing of those products for the inmates who might purchase them. As noted, defendants do not so argue, and in any event...the same analysis is more appropriately applied in assessing the defendants' immunity defense.

2007 WL 2660282 at *11 n. 13.

allegedly written by plaintiff" and having "generally created some undefined policy or custom". (Defs.' Mem. of Law at 14). According to defendants, "plaintiff did not inform Commissioner Horn or any of the facility wardens that he was unable to identify products containing pork prior to consuming them. To the contrary, plaintiff has previously alleged that he generally informed these officials that pork products were being sold in the commissary." (Id. at 14-15).[11] They further complain that in the most recent pleading plaintiff does not describe "the substance of the alleged notice given to defendants." (Id. at 15). Accordingly, they say, "Clearly, the DOC officials were not put on actual or constructive notice that plaintiff's rights were being violated due to plaintiff's consumption of products containing pork." (Id.).

In plaintiff's response he cites and quotes from allegations from the current complaint to the effect that he complained to the various supervisory defendants about the practices that he identifies in his complaint, and that his complaints proved fruitless. (Pl.'s Mem. of Law at 10)(citing 2d Am. Compl. at ¶¶ 8, 58-60). He also cites his allegations that the violations were attributable to the policies or

---

[11] Defendants neither cite nor quote these earlier allegations of the plaintiff, although they refer to them generally.

practices approved or acquiesced in by those defendants. (Id.)(citing 2d Am. Compl. at ¶¶ 8, 58-59).

In reply defendants again contend that plaintiff makes "<u>no</u> allegations that these defendants created (or permitted the continuance of) any policy or practice, or were otherwise involved in any of the specific actions which he claims contributed to defendants' failure to provide him with a Halal meal." (Deft's Reply Mem. of Law at 15)(emphasis in original). They also assert that the complaint is deficient (1) because it does not explicitly say that defendants "took no measure" to ensure that inmates could identify non-Halal products in the commissary, (2) because it does not specifically identify any offending policy or practice, and (3) because it does not say specifically that plaintiff notified the supervisory defendants about the problem at the commissary or about the violation of Halal rules in the prison kitchen's cooking of food and sanitizing of trays designated for Halal meals. (Id. at 15-16).[12]

---

[12] However, defendants appear implicitly to concede that plaintiff alleges that he complained to the supervisory defendants about the failure to provide disposable trays to Muslim inmates, although in so stating they again quote plaintiff's superceded amended complaint dated October 30, 2005. (Defs.' Reply Mem. at 16)("plaintiff has alleged only that he 'wrote a grievance [to] notify [defendants] about the [prewashed] trays and that the jail official[s] [were] in violation of [DOC Directive 3254].'").

While making these last arguments, defendants appear at one point to recognize that plaintiff does in fact make general allegations that he brought each of these problems to the attention of the supervisory defendants. Nonetheless, they insist that these allegations must be ignored because they are "belied by plaintiff's prior and more specific representations to the Court in plaintiff's prior Amended Complaint." (Id. at 16).

These arguments are plainly meritless. The current pleading alleges that plaintiff notified defendant Horn and the wardens of the violations of which he is now complaining, and that these defendants refused or failed to act to correct the violations. (2d Am. Compl. at ¶ 60. See also id. at ¶ 16). He further alleges that the consistent practice of these facilities over the many years while he was incarcerated are attributable to policies or practices created by the supervisory defendants or allowed by them to continue. (Id. at ¶ 8(a)-(k)). Such allegations plainly satisfy the requirements for pleading supervisory liability, since they permit the inference that the supervisors (1) failed to remedy a wrong after learning of the violation, (2) created or allowed the policy or custom under which the incident occurred, (3) were grossly negligent in managing subordinates who caused the

violations, or (4) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Randolph, 2007 WL 2660282 at *11-12.

In resisting this conclusion, defendants seem to imply that general assertions of this nature are insufficient and that the plaintiff must allege in detail the specifics of his communications with the supervisory defendants, but that is plainly not required by Rule 8(a). All that is needed is a short and plain statement of the pleader's claim, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Iqbal, 490 F.3d at 157-58, and in this case plaintiff meets that requirement. See, e.g., McKenna v. Wright, 386 F.3d 432, 437-38 (2d Cir. 2004).

Defendants also again rely on the notion that plaintiff's prior pro se versions of his complaint are somehow inconsistent with his current allegations and must be deemed to supercede the more recent complaint. As we have already noted, defendants have it exactly backwards. The current complaint supercedes prior pleadings, with the result that allegations found in the earlier ones are no longer judicial admissions and hence are not dispositive, but rather prior statements that, if

inconsistent with testimony that the plaintiff may offer in the case, may be used to impeach his credibility. <u>See</u>, <u>e.g.</u>, <u>Tho Dinh Tran</u>, 281 F.3d at 32. Hence, even if the previous pleadings were inconsistent with the current one on the issue of notice to the supervisory defendants -- as defendants assert but fail to demonstrate -- that would not justify dismissal of plaintiff's claims against the supervisory defendants.

Finally, in any event, defendants fail to show that the <u>pro se</u> versions of the complaint contradict the current one on the matter of notice. In those earlier versions, plaintiff alleged that he had complained about aspects of the practices that he targets in this lawsuit, but given the liberal reading to which those <u>pro se</u> allegations are entitled, they do not demonstrate that plaintiff failed to give the sort of notice that he now alleges was provided to the supervisory defendants.

In sum, to the extent that defendants seek dismissal of the complaint, or portions of it, for failure to allege their responsibility for the violation of his rights, the application should be denied.

C. <u>Immunity</u>

Defendants' remaining argument is that the prison employees and officials named as individual defendants are protected by qualified immunity. As in Randolph, we agree in part, albeit on a ground not really articulated by defendants.[13]

An individual defendant sued for damages may invoke a qualified-immunity defense if he can demonstrate that his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the incident. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Blouin v. Spitzer, 356 F.3d 348, 358 (2d Cir. 2004); Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). The defendant will be deemed immune from liability if he can show either (1) that his conduct did not violate the plaintiff's "clearly established rights" or (2) that a reasonable person in the defendant's position could have believed, in view of all of the pertinent circumstances, that his conduct did not violate such a right. See, e.g., Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004).

---

[13] The following discussion is in large measure taken in haec verba from Randolph, 2007 WL 2660282 at *12-13, since the arguments by defendants here parrot those made by their counsel in that earlier case. The one variation from Randolph is that in this case plaintiff offers a basis for his commissary claim that justifies denying immunity on that claim to the supervisory defendants.

Typically such a defense rests on an evidentiary showing of what the defendant did and why, see, e.g., id. at 109; Hurlman v. Rice, 927 F.2d 74, 78 (2d Cir. 1991) (finding that the second prong of the qualified immunity analysis "has its principal focus on the particular facts of the case"), although there may be circumstances in which an immunity defense will be upheld based solely on the pleadings. That would be the case if the defendant's conduct, as alleged by the plaintiff in his complaint, did not transgress a "clearly established statutory or constitutional right," or if the circumstances of the conduct, as alleged in the complaint, indisputably demonstrate that a reasonable state actor in the position of the defendant could have believed that his conduct was lawful. See, e.g., Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998); Green v. Bauvi, 46 F.3d 189, 195 (2d Cir. 1995); Liffiton v. Keuker, 850 F.2d 73, 76 (2d Cir. 1988).

Defendants here rest their immunity defense on the allegations of the complaint. They first assert that even if the complaint does articulate a constitutional claim, the defendants could reasonably have believed that their conduct was lawful because the Supreme Court and the Second Circuit have never held that a Muslim inmate has a right to a meal on a disposable tray or to a tray washed separately from non-Halal

trays or that a prison may not sell pork by-products to its inmates. (Defs.' Mem. of Law at 16). Second, defendants argue that plaintiff is in fact complaining that defendants were violating an internal Department of Correction "directive" requiring the use of disposable trays for Halal meals, and that prison employees and officials could reasonably have believed that the directive was not sufficiently mandatory to trigger a due-process entitlement or to be a source of an enforceable right of any inmate. (Id. at 17). Third, they point out that no precedent precludes a prison from selling non-Halal food products to willing inmates. (Id. at 18). To assess these arguments, we separately consider plaintiff's claims concerning meals provided at the cafeteria and food items sold at the prison commissaries.

Defendants' reliance on the absence of controlling decisional law about the use of disposable trays and the washing procedures for non-disposable trays and their reference to the due-process significance of the DOC directive are both well wide of the mark. Indeed, they repeat arguments made by defendants in Randolph and rejected there. These arguments do not improve with repetition.

Defendants' point about the absence of legal authority

addressing disposable trays and washing procedures -- an argument that is ungirded by any cited legal authority -- misapprehends the nature of the immunity test. The key question and initial step in the analysis requires defining the operative legal principle that must be "clearly established". See Anderson v. Creighton, 483 U.S. 635, 639-640 (1987). Not surprisingly, defendants in such cases typically seek to define the pertinent rule as narrowly as possible, e.g., Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003)(rejecting defendants' argument that although prisoners have a right to a diet consistent with their religious scruples, defendants were entitled to qualified immunity because courts had not yet specifically required prisons to provide Eid-ul-Fitr meals to Muslim prisoners), and that is what defendants' counsel does in this instance. That is not, however, an appropriate form of analysis. See, e.g., id. (rejecting defendants' narrow definition of operative legal principle, and relying on broader precedent enforcing inmate entitlement to religiously compliant meals).

We start with the basic and well-settled holding of the federal courts that inmates are entitled to practice their religion and must be offered "reasonable opportunities" by their jailers to do so. See, e.g., Hudson v. Palmer, 468 U.S.

517, 523 (1984)(quoting _Cruz v. Beto_, 405 U.S. 319 (1972)(per curiam)). To justify restrictions on the prisoner's religious observances, prison officials must demonstrate that they are "'reasonably related to legitimate penological interests.'" _O'Lone v. Estate of Shabazz_, 482 U.S. 342, 349 (1987)(quoting _Turner v. Safley_, 482 U.S. 78, 89 (1987)). Based on that general principle, it has long been held that "[p]risoners have a right to receive diets consistent with their religious scruples." _Benjamin v. Coughlin_, 905 F.2d 571, 579 (2d Cir. 1990)(quoting _Kahane v. Carlson_, 527 F.2d 492, 495 (2d Cir. 1975)). _Accord_, _e.g._, _McEachin_, 357 F.3d at 203; _Ford_, 352 F.3d at 597 (quoting _Bass v. Coughlin_, 976 F.2d 98, 99 (2d Cir. 1992)).

Taking as true the allegations of the complaint, we must assume that Muslim dietary rules require that Halal food be prepared in certain specific ways and that the dishes and trays on which they are placed must be specifically dedicated to Halal food and may not be washed in the same container as dishes and trays used for non-Halal foods. Indeed, this notion is reflected not only in plaintiff's allegations -- which are binding on us for Rule 12(b)(6) purposes -- but also in the Department of Correction's own 1986 directive cited by both sides, which governs the preparation of Halal and Kosher

28

meals.[14] That directive makes clear the understanding of the Department regarding the need (1) for strict segregation of both Halal and Kosher food from other foods, (2) for similar segregation of the implements that come in contact with those foods, including food containers, and (3) for the separate preparation of those foods in conformity with religious requirements. Randolph, 2007 WL 2660282 at 15 (describing DOC Directive #3254, annexed to Randolph's Am. Compl. at Ex. 12).

The complaint and plaintiff's motion papers go on to assert that the three prison facilities ignored those requirements in a variety of ways. These include (1) preparation of food in a manner that violates Halal requirements (by failing to completely cook meats and use of pork-based margarine), (2) stacking and washing Halal trays with non-Halal trays, and (4) use of soap containing pork by-products for washing Halal kitchen items. (Am. Compl. at ¶¶ 37-57). These allegations, if credited, make out a series of violations of the inmates' long-recognized constitutional right "to receive diets consistent with their religious scruples." Kahane, 527 F.2d at 495.

---

[14] Although the directive is not included in the record currently before us, it was submitted in Randolph, see 2007 WL 2660282 at *15, and we may refer to it here, as the complaint refers to it and according to defendants it is integral to that pleading.

Moreover, notwithstanding defendants' implicit argument to the contrary, they cannot be deemed immune from liability for the violation of such a well-settled principle merely because the courts have not addressed -- on a practice-by-practice basis -- each of the specific religious practices that constitute the allegedly violated requirements of Halal. See, e.g., Ford, 352 F.3d at 597. Rather, the operative question is whether a reasonable person in the defendant's position could have believed, in view of all of the pertinent circumstances, that his conduct did not violate such a right. See, e.g., Kerman, 374 F.3d at 108-09; Ford, 352 F.3d at 597. Moreover, as noted, when the immunity defense is asserted solely on the basis of the complaint, the movant must demonstrate that the allegations of the complaint, even if deemed true, would preclude a trier of fact from finding that the defendant lacked a reasonable basis to believe that his actions were lawful.

In this case it cannot be said that the plaintiff's allegations in any of his pleadings demonstrate that the Commissioner and the facility wardens had reason to believe that the alleged handling of food and equipment in the facility's cafeteria and kitchen did not transgress Halal requirements or that is was, for other reasons, consistent with constitutional standards. As noted, the requirement that

prisons meet the religious needs of their inmates, including by providing a religiously correct diet, has long been established, and prison officials must be deemed to understand that principle. Moreover, the food practices of which plaintiff complains were in asserted violation of Halal rules, and the very existence of the cited DOC directive -- which provided considerable details concerning the handling of Halal and Kosher food -- is evidence that senior personnel at the prison and at the pinnacle of the Department knew or should have known that the practices challenged by plaintiff violated the religious tenets of Muslim prisoners such as plaintiff.

Defendants next offer a brief argument for the notion that the violation of the DOC directive cannot form the basis for due-process liability because defendants might reasonably have believed that the directive was not mandatory. (Defs.' Mem. of Law at 17). The short answer to this argument is that plaintiff is not asserting such a due-process claim, as is evident from the complaint and further emphasized in plaintiff's opposition papers. (Pl.'s Mem. of Law at 14-15). Indeed, the primary significance of the directive appears to be as evidence that senior corrections officials were presumptively on notice of the basic Halal requirements that plaintiff is asserting they violated.

In sum, the supervisory defendants cannot successfully invoke an immunity defense with regard to the cafeteria claims by way of a Rule 12(b)(6) motion.[15]

Plaintiff's claim with respect to the commissary rests on the notion that the sale to inmates of pork-based products without identification of which items are of that nature leads Muslim inmates to purchase and use food products in violation of their religious beliefs, and that their placement of these non-Halal items on Halal trays contaminates those trays for all subsequent observant users, including plaintiff. In arguing for immunity on this claim, defendants choose to characterize the claim as simply that the sale of non-Halal products violates plaintiff's free-exercise rights, a proposition for which defendants correctly note that there is no binding legal precedent. The problem with this argument, however, is that it mis-characterizes plaintiff's claim. As we have noted, plaintiff is asserting only that the failure to identify which food products sold at the commissary are non-Halal causes Islamic inmates to mistakenly purchase such products and place them on the Halal trays in the prison dining facility, thus contaminating those trays and depriving observant inmates such

---

[15] Plaintiff does not assert the cafeteria claims against the non-supervisory defendants.

as plaintiff of their ability to eat in a manner consistent with the rules of their religion.

Accordingly, defendants' articulated argument for the invocation of immunity on the commissary claim cannot be sustained. That said, there does appear to be a basis for recognizing a qualified-immunity defense for the defendant correction officers -- though not the supervisory defendants -- on the commissary claim. As noted, the alleged link between the practices at the commissary and the violation of Halal rules at mealtime involves the failure to provide notice at the commissary of which food items were non-Halal. The complaint does not allege, however, or even hint, that the defendant correction officers, who supposedly simply sold items to inmates or oversaw inmates working at the commissary, had any authority to decide not to sell pork-based products or that they had any responsibility for the absence of a list identifying which products were tainted by pork or its by-products. Under these circumstances, those officers can be viewed as having no causal role in the conditions about which plaintiff complains. Hence they could reasonably have assumed that their conduct was not constitutionally suspect. Accord, e.g., Randolph, 2007 WL 2660282 at *14.

In contrast, the supervisory defendants cannot escape potential liability on this claim, at least on the face of the complaint. As noted, these defendants were allegedly notified of the problem and assertedly chose not to act. Moreover, the complaint accuses them of also providing the second link in the chain of causation leading to the alleged violation of plaintiff's right to a Halal meal -- the failure to ensure the proper washing of the Halal trays. Under these circumstances and in view of the allegation that these defendants were responsible for the lack of notice at the commissary, any potentially successful invocation of an immunity defense on their behalf must await fact-finding.

## II. Plaintiff's Motion for Expedited Discovery

In opposing defendants' dismissal motion, plaintiff also asks leave to conduct expedited discovery to determine the identities of the John Doe defendants mentioned in the complaint. Since it is apparent that the complaint will survive defendants' motion, there is no justification for staying discovery on either side. As for plaintiff's request to expedite certain aspects of his efforts in this regard, which we infer is motivated by statute-of-limitations concerns as well as issues regarding the timing of service of process under

Rule 4(m), we grant him leave to pursue targeted discovery regarding the identity of the John Doe defendants and to request responses to his written requests for that information on a two-week cycle. That said, if the specific requests that plaintiff is going to pursue realistically require more time for responses, defendants will be free to request a more extended schedule.

## CONCLUSION

For the reasons noted, we recommend that defendants' motion to dismiss be denied except as to the defendant correction officers, who are named solely with respect to the commissary claim.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Gerard E. Lynch, Room 910, and to

the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

**Dated: New York, New York**
**January 10, 2008**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation and Memorandum and Order have been mailed today to:

Patrick D. Oh, Esq.
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, New York 10281

Daniel J. Howley, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Douglas I. Koff, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Kimberly Conway, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007